[Civ. No. 6179. First Appellate District, Division One.—May 3, 1928.]

A. M. SHOOK, Respondent, v. MARGUERITE BRADLEY BAIRD et al., Appellants.

Haines & Haines for Appellants.

Herbert C. Kelly for Respondent.

CASHIN, J.—An action by the plaintiff to quiet the title to the west half of lot 15 of Encanto, a subdivision situated in the city of San Diego.

The plaintiff claims title by virtue of a tax deed to the property executed by the tax collector of the city, and the defendants were the owners of the property subject to the proceedings leading to the execution of the tax deed.

The trial court entered judgment for the plaintiff, from which an appeal was taken by the defendants.

The city by its charter—which was adopted in 1889 (Stats. 1889, pp. 644–729)—made express provision for taxation for municipal purposes of property situated therein, the state laws then in force with respect to the method of assessment, the collection of taxes and the sale and redemption of property sold being closely followed.

Sections 15 to 27, inclusive of section 3, chapter 1 of article VI of the charter provided for the sale each year at public auction after notice of all real property upon which the taxes assessed the preceding year were delinquent; and also that in case there should be no purchaser for the same the property be struck off to the city; that in the latter event the city at any time after the expiration of the period for redemption, to wit, twelve months, would be entitled to a deed whenever called for by the common council. The charter also contained the following general provisions, which are still in force: ''Except as in this charter otherwise provided the assessment of property taxable to the city for municipal purposes, the equalization of assessments and collection of taxes, the sale of property for unpaid taxes, and the redemption of property sold for taxes, shall be made in the same manner and with like effect as now or may be hereafter provided by law for the assessment of property, equalization of assessments, levy and collection of taxes, and sale of property, for state and county purposes and redemption thereof; and all provisions of law applicable to such assessment, equalization, levy, collection and sale for state and county purposes are hereby applied to and shall be the law governing such assessment, equalization, levy, collection and sale for municipal purposes'' (Charter, sec. 3, chap. 1, art. VI).

The last section also provides that ''all powers and duties so by law conferred or imposed'' upon the following county officers, the assessor, tax collector, treasurer, clerk, and auditor, ''are hereby conferred and imposed'' upon the corresponding city officers.

In 1905 sections 19 to 27, inclusive, of the above chapter, were repealed and section 18 thereof amended (Stats. 1905, pp. 913–924). The material portions of the section which as amended makes provision for the sale of property for de-

linquent municipal taxes, its redemption and the execution of deeds therefor to the city after the expiration of the period for redemption are, as follows: "On the day and hour fixed for the sale all the property delinquent upon which the taxes of all kinds, penalties and costs have not been paid shall by operation of law and the declaration of the tax collector be sold to the city of San Diego, and said tax collector shall make an entry 'Sold to the city' on the delinquent assessment list opposite the tax (and a duplicate certificate of sale shall be delivered to the city auditor and filed by him in his office, and a like certificate filed in the office of the city clerk) . . . " "A redemption of the property sold may be made by the owner or any person in interest within five years from the date of sale to the city or at any time prior to the entry or sale of said land by the city, in the manner provided by law for the redemption of property sold to the state for state and county taxes at the time such redemption is made. . . . " If the property is not redeemed within five years from the date of the sale thereof to the city the tax collector of said city or his successor in office must make the city a deed to the property. . . . "

By the above amendments to the charter provisions respecting sales for unpaid municipal taxes were made to conform substantially to the sections of the Political Code relating to tax sales as the same were amended in 1895 (Stats. 1895, p. 18) and no amendments to the charter to conform with subsequent changes in the above code provisions have been made.

██ The charter makes no express provision for a resale of property sold by operation of law and the declaration of the tax collector to the city, or for its resale after execution to the city of the tax collector's deed; and it is urged by appellant that the proceedings leading to the execution to respondent of a deed to the property here involved were unauthorized and the deed void.

The proceedings leading to the execution of the deed in question, as shown by the record, were as follows: Under date of February 17, 1919, the tax collector issued to the city of San Diego a certificate of sale of the property, reciting that the property had been assessed for the year 1918 to W. A. Shaules; that the same by operation of law and

the declaration of the tax collector had on January 25, 1919, been sold to the city for the nonpayment of taxes assessed for the previous year, with the percentage, costs and charges thereon. The certificate also contained the following statement: "Unless said real estate so sold as aforesaid is redeemed within five years from the date of sale the purchaser thereof will be entitled to a deed therefor on 26 day of January, A. D. 1924." Under date of January 28, 1924, the tax collector executed and acknowledged a deed to the city, reciting the previous sale, that no redemption had been made and that the city was entitled to a deed on January 26, 1924. This deed was recorded March 19, 1924. On January 26, 1924, the city tax collector also executed and acknowledged a deed to respondent for the same property, reciting that the property "was duly assessed for taxation in the year 1918 to W. A. Shaules and was thereafter on the 28th day of January, 1924, duly sold to A. M. Shook for the nonpayment of delinquent taxes which had been legally levied in the year 1918 and were a lien on said real property," and further "that all taxes levied and assessed against said property prior to the year 1924 have been paid and discharged . . . "

It appears that the execution of the deed to respondent followed proceedings by the tax collector under the provisions of sections 3764, 3771, and 3785b of the Political Code as amended in 1913 (Stats. 1913, pp. 556–558), and respondent contends that the provisions of section 18 of chapter 1 of article VI of the charter were superseded by the amendments to the above sections of the Political Code, and that sales for delinquent municipal taxes assessed after the year 1913 were governed by the code provisions.

The amendments to the charter adopted in 1905 provided a complete scheme for the levy and assessment of municipal taxes, for sales for their nonpayment and for the redemption of property sold to the city. While these amendments conformed substantially to the general laws then in force, the changes in the latter made in 1913 were not followed by corresponding amendments to the charter, and to the extent that the plan or method expressly provided remained unchanged by amendment the charter had "otherwise provided." Its provisions in those respects were within the exception contained in section 3 (chap. 1, art. VI), and

were not affected by the code amendments of 1913. As stated, the charter makes no express provision for a resale by the city of property acquired through tax proceedings; but it is further contended by respondent that the tax collector is authorized by section 3, chapter 1, article VI of the charter to sell such property in the manner provided by sections 3897 and 3898 of the Political Code. Under the above code sections county tax collectors are without power to sell property sold for taxes and which has been deeded to the state unless directed to do so by the controller (Pol. Code, sec. 3897). No officer or body is clothed by the charter with authority to direct or make a sale of property, however acquired, which is owned by the city except the common council (Charter, sec. 1, subd. 50, chap. 2, art. II), which may provide for such sale by ordinance; and it is not contended that the sale in question was authorized by that body.

Respondent further suggests that the city tax collector has for several years pursued the method provided by sections 3764, 3771 and 3785b of the Political Code, and that his practical construction of the charter provisions should not be disturbed, citing *Marysville* v. *Smith*, 178 Cal. 786, 790 [175 Pac. 13]. As to this contention, however, it will be sufficient to say that no sales by the tax collector other than those involved in this action are shown by the record to have been made.

For the reasons stated it is our conclusion that the sale by the tax collector was unauthorized and that the deed to respondent was for that reason void; and it will therefore be unnecessary to consider the further claim by the appellants that the proceedings had were not conducted in accordance with the requirements of the above code sections.

The judgment is reversed.

Tyler, P. J., and Knight, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 2, 1928.

All the Justices present concurred.